## Taylor v. Commonwealth.

Nov. 5, 1943.

W. H. Barnes for appellant.

Hubert Meredith, Attorney General, and Arthur T. Iler, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming.

Appellant was convicted of shooting with intent to kill one Robert Sweeney, and sentenced to five years confinement in the penitentiary. On this appeal he contends that the evidence was insufficient to support the verdict; that the Court erred in its instruction on self defense; and that the attorney for the Commonwealth made improper statements in his argument to the jury. We shall discuss these contentions in their order.

1. According to Sweeney's testimony, appellant called him into his yard, sold him some "home brew" and canned beer, remonstrated with him for not picking up some cans which Sweeney had left on the premises previously leased from appellant, threatened to kill him,

and picked up a pistol which went off when Sweeney grabbed it. Sweeney went out of the door stating that he was going to take the pistol to the Sheriff, and when he reached a nearby churchyard, appellant fired four shots at him with another pistol. Seeing that he had missed hitting Sweeney, appellant said to him: "Come and give me my gun and I won't have to go to court," and, as Sweeney was handing over the gun, grabbed him and shot him; and, continuing in Sweeney's language, "I went on and while we were tussling over the gun we fell in the ditch back off the church ground and we were laying side by side and every time he had it toward me he shot me, I thought I was shot in the leg but it was blood running from my side, and he was snapping that gun and I seen there was no more loads in it and I got up and he said I have a shot gun in the house I'll bet that will kill you, and I knocked him over in the ditch, and when he got up I was going up the road."

Sweeney admitted that after appellant had fired three shots, he Sweeney, fired three shots with the gun which he had taken from appellant, claiming, however, that he had fired them into the ground, and that when they were "scuffling over the gun" he cut the appellant with a knife.

According to appellant, Sweeney, in company with Roosevelt Sweeney, his brother, "came and walked in the house, and when they went in the house Robert had his left arm around my waist and commenced cutting me—* * * I tried to scuffle with him and get out and when I did get out behind me, and when we fell in the ditch he took my pistol off and started across the church yard, and I went back in the house and I got another pistol and I told him to bring my pistol back, and he held the pistol that was and shot two or three times at me and shot me in the leg."

Roosevelt did not testify, and there were no eyewitnesses to the event narrated. Both of the participants are negroes, both were drunk, and their testimony, as it appears in type, was, in many respects, unsatisfactory. The revolvers which, according to appellant's counsel, were of a type which could not be manipulated in the manner stated by Sweeney in other portions of his testimony, are not before us; and even if they were, and to the extent claimed contradicted Sweeney's testimony, we would be unable to say that the testimony as a whole

was insufficient to support the verdict. Without elaborating further, it is sufficient to say that the case was of that character in which the verdict of a jury is peculiarly valuable, since the jurors were afforded an opportunity of observing the demeanor of the witnesses as they testified.

II. The first paragraph of the self defense instruction is as follows: "Although you may believe from the evidence to the exclusion of a reasonable doubt that the defendant shot at and wounded Robert Sweeney with a pistol but from which shooting said Robert Sweeney did not die, yet if you further believe from the evidence that when he did so he believed, and had reasonable grounds to believe that he was then in danger of death or some other great bodily harm about to be inflicted upon him by said Robert Sweeney, then he had the right to use such means as in reason appeared to him to be necessary to avert the pending danger, real or to him apparent, even to the extent of shooting at and wounding said Robert Sweeney, and in this event you will return a verdict of not guilty but this instruction is subject to the following modification:"

Appellant criticises the instruction because the words, "real or to him apparent" were not inserted after the word "danger" as it appears in the ninth line of the quoted portion; and because of the use of the phrase "avert the pending danger, real or to him apparent" instead of the words "then he had the right to use such means as in reason appeared to him necessary to defend himself." A sufficient answer to the first criticism, it seems to us, is that the insertion of the phrase, "real or to him apparent," following the word "danger" as it appears in the fourteenth line, necessarily informed the jury that appellant had the right to himself judge of the existence of the danger, and, provided he acted reasonably, that it was not necessary in order to entitle appellant to an acquittal on the ground of self defense that he show that the danger to him was actual. Moreover, if the jurors had believed appellant's version of the occurrence, no question could have arisen in their minds as to the reality of the danger which threatened appellant and caused him to shoot the prosecuting witness.

As to the second criticism, it is sufficient to say that if the jury was capable of understanding any in-

struction which the Court gave or might have given, it could not have construed the words, "to avert the pending danger real or to him apparent" otherwise than as meaning that the defendant had the right to defend himself, which meaning was made crystal clear by the added phrase, "even to the extent of shooting and wounding said Robert Sweeney."

The self defense instruction is further criticised because the Court, in an added paragraph, qualified it by informing the jury in substance that appellant should not be acquitted on the ground of self defense if, when not in apparent danger, he wilfully and feloniously brought on the difficulty by "making demonstration to shoot Sweeney;" or, if the appellant and Sweeney voluntarily entered into an actual combat "with the intention on the part of each to kill the other, or to do some great bodily harm." While the qualifications complained of are, perhaps, subject to the criticism that they were not as aptly expressed as they might have been, which criticism we regard as lacking in substance since the jury could not have misunderstood the meaning of the qualifications, the complaint most vehemently urged by appellant is that the evidence did not justify either of the qualifications. With this we cannot agree since, according to the testimony of the prosecuting witness, appellant, without cause, provoked the difficulty which occurred in appellant's house, and after Sweeney had retreated from the house, followed him and treacherously shot him while Sweeney was making peaceful overtures. Assuming the truth of Sweeney's testimony, the most favorable interpretation that could be placed upon appellant's conduct is that he voluntarily entered into combat with Sweeney. In view of Sweeney's testimony there is no doubt that the Court's qualifications of the self defense instruction were proper. Roberson's New Kentucky Criminal Law and Procedure, Section 312.

III. The objectionable remarks which appellant's counsel states in his brief were made to the jury by the attorney for the Commonwealth during his closing argument are not disclosed by the Bill of Exceptions or elsewhere in the record. We have many times written that where the Bill of Exceptions is silent on the subject, the error is not presented for review.

Judgment affirmed.